HOLMES, Judge
(concurring specially).
I concur in the result reached by Judge Bradley, but am constrained to make the following statement:
The Department contends that Pritchett abandoned his Scottsboro residence and returned to Woodville without obtaining oral or written permission to do so. There is evidence, however, which supports a contrary conclusion. Therefore, a factual question exists for resolution by the fact finder.
Pritchett testified that, before he gave up his residence in Scottsboro and returned to Woodville, he informed his “first chain of command, Corporal Overtree,” of his intended move. Pritchett testified that he advised Overtree that he had received the April 22, 1980, memorandum regarding the residency requirement and that it was his understanding of the memorandum that he was exempt from the requirement that he reside in Scottsboro. He further testified that Overtree “had the authority to tell me different if he wanted me to know different. ...” There was, however, no evidence that Overtree advised Pritchett that his interpretation of the memo as authorizing his return to Woodville was erroneous or that he should seek permission to move from a higher level within the Department.
Absent the above testimony showing that Pritchett did check with his immediate superior before returning to Woodville based upon an apparently erroneous interpretation of the April 1980 memo, it is doubtful that his reliance on the memo in and of itself would toll the running of the statute of limitations.
With regard to the question of damages, it should be noted that the Department’s officials who were defendants in this § 1983 action could have asserted the defense of qualified, or good faith, immunity to protect them from liability for such damages in the performance of their discretionary functions. To be shielded by qualified immunity, the official must not have known or reasonably should have known that the action he took within his sphere of official responsibility would violate the plaintiffs constitutional rights or he must not have taken the action with malicious intention to deprive the plaintiff of his constitutional rights or cause other injury. Espanola Way Corp. v. Meyerson, 690 F.2d 827 (11th Cir.1982), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983) (citing Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
It is undisputed that qualified immunity is an affirmative defense which must be specifically asserted by the defendants in a § 1983 action. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In the present case the Department failed to plead immunity as an affirmative defense. In fact, the Department did not raise what appears to be a good faith defense until its motion for new trial, filed approximately two months after the trial. The defense thus came too late. See Rule 8(c), A.R.Civ.P.; Robinson v. Morse, 352 So.2d 1355 (Ala.1977).
It appears, however, that, had the defense been properly raised, the defendant officials may well have been entitled to its protection. The testimony, in my opinion, does not appear to establish that the Department’s officials knew or should have known that their application of the residency requirement violated Pritchett’s constitutional rights or that they acted maliciously toward him.