811 F.2d 1504
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David Lee CARR, Plaintiff-Appellant,
v.
David Alford, Defendant-Appellee.
James Spalding, Norace Chapman, Ronald Brown, R.B. Allen;
O.L. Moore, Ward Robinson, Elias G. Haikal, M.D.,
James O. Holladay, Defendants.
David Lee CARR, Plaintiff-Appellant,
v.
David ALFORD, Elias G. Haikal, M.D., Defendants-Appellees,
James Spalding, Norace Chapman, Ronald Brown, R.B. Allen,
O.L. Moore, Ward Robinson, James O. Holladay, Defendants.
 Nos. 86-6731(L), 86-7259.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 28, 1986.
Decided Feb. 4, 1987.
 
 Before RUSSELL, HALL and WILKINS, Circuit Judges.
 David Lee Carr, appellant pro se.
 John R. Fowler, Meyer, Darragh, Buckler, Bebenek & Eck; Franklin L. Gritt, Jr., Calwell, McCormick & Peyton, L.C., for appellees.
 PER CURIAM:
 
 
 1
 The appellant, David Lee Carr, a West Virginia inmate, filed this 42 U.S.C. Sec. 1983 action seeking injunctive relief and damages for various violations of his constitutional rights.[1] Specifically, Carr alleged that while confined as a pretrial detainee in the Putnam County Jail he was, among other things, denied needed medication, denied access to a law library or legal aid, and subjected to generally unsanitary conditions. Another allegation was that a doctor, pursuant to a court order, improperly extracted blood from Carr and, after Carr went into shock, denied him medical attention. The district court initially dismissed the claims on the ground that Carr's allegations failed to state claims upon which relief could be granted.
 
 
 2
 This Court affirmed in part and remanded to permit Carr to particularize 17 claims about jail conditions. Carr v. Hutton, No. 85-6154 (4th Cir., August 27, 1985) (unpublished).[2] We noted that only two defendants were properly retained in the action on remand: David Alford, the Sheriff of Putnam County and apparently the person in charge of the Putnam County jail; and Dr. Elias G. Haikal, the doctor who Carr alleged had denied him medical attention. We noted that, upon remand, the appropriate initial procedure for disposition of the conditions claims was by a summary judgment motion.
 
 
 3
 On remand, Haikal on November 6, 1985, filed a summary judgment motion supported by certain records of Carr's state criminal proceedings. Included was a state judge's order ordering Haikal to draw a sample of Carr's blood. Haikal did not file any affidavits. On November 14, 1985, Carr filed a document styled as a "Traverse to Motion for Summary Judgment." Carr did not file any affidavits. On December 12, 1985, Alford filed a summary judgment motion and supporting memorandum. He did not file affidavits. On January 3, 1986, Carr filed a "Traverse to answers of David Alford." Again, Carr filed no affidavits. On March 21, 1986, Alford, by counsel, filed his own affidavit and that of another jail official. The affidavits concerned jail conditions challenged in Carr's initial complaint.
 
 
 4
 On August 6, 1986, the district court granted Alford's motion for summary judgment. The court relied on two principal rationales. First, it ruled that Carr "had numerous opportunities to supply sufficient factual basis to support his claim, yet has failed to do so." Second, the court ruled that Alford's immunity from liability was clear.
 
 
 5
 On August 18, 1986, Haikal filed an affidavit concerning his drawing blood from Carr. One day later, on August 19, 1986, the district court granted Haikal's summary judgment motion. The court again relied on two rationales. First, it concluded that "[u]pon review of [Haikal's] affidavit, along with the medical records and/or report attached, it appears that Carr was provided with sufficient and adequate medical care and at no time suffered any medical shock." Second, the court ruled that, with respect to the drawing of blood, Haikal was absolutely immune from liability because he acted under court order. On August 20, 1986, judgment was entered dismissing the action. Carr appeals.[3]
 
 
 6
 We first address the propriety of the grant of summary judgment to Alford and conclude that summary judgment was improperly granted. Before a motion for summary judgment is granted, a pro se plaintiff must be advised of his right to file counter-affidavits or other responsive material and he must be alerted that a failure to so respond may result in the entry of summary judgment against him. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir.1975). In addition, the Roseboro notice must be sufficiently clear to be understood by a pro se litigant and calculated to apprise him of what is required under Fed.R.Civ.P. 56. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir.1979). Here, the district court failed to give Carr adequate opportunity to respond to Alford's motion and supporting material, including his affidavits. Specifically, the court failed to give Carr the notice required under Roseboro. Carr thereby failed to receive adequate notice as to how he might support his claims.
 
 
 7
 In granting summary judgment to Alford, the district court also relied on his "immunity" from liability. Although the nature of immunity claimed by Alford is not entirely clear, he apparently was asserting a qualified immunity. Under the doctrine of good faith immunity, officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Good faith immunity is an affirmative defense that the defendant official must plead. Gomez v. Toledo, 446 U.S. 635 (1980). On summary judgment, the judge is to determine if the law asserted to have been violated was clearly established at the time the defendant official acted. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Harlow, supra, at 818-19. Here, Alford failed to show that the law was not clearly established concerning many of the conditions challenged by Carr. Accordingly, summary judgment was not appropriate on that ground, either.
 
 
 8
 The grant of summary judgment to Haikal was also flawed. With respect to the drawing of blood, Haikal does appear to enjoy absolute immunity because he acted under court order. See Phillips v. Singletary, 350 F.Supp. 297, 300 (D.S.C.1972). In rejecting Carr's claim that after drawing the blood, Haikal denied him needed medical attention, the district court relied on Haikal's affidavit accompanying his summary judgment motion. Again, however, Carr was not given a Roseboro notice or adequate opportunity to respond to Haikal's affidavit. Accordingly, summary judgment was improperly granted. In summary, summary judgment was improperly granted to both defendants because Carr was not given a fair opportunity to establish that genuine issues of material fact existed which would preclude the entry of summary judgment. Thus we must remand for further proceedings.
 
 
 9
 As the record and materials before the Court indicate that oral argument would not significantly aid the decisional process, we dispense with argument. The judgment of the district court is vacated and the case remanded for further proceedings not inconsistent with this opinion.
 
 
 10
 No. 86-6731, DISMISSED.
 
 
 11
 No. 86-7259, VACATED AND REMANDED.
 
 
 
 [1]
 Carr brought two separate actions in the district court which were consolidated. In his first appeal, he filed several notices of appeal which this Court consolidated
 
 
 [2]
 The same opinion affirmed the dismissal of claims challenging Carr's conviction and 20 of Carr's 37 conditions of confinement claims
 
 
 [3]
 In this appeal, Carr also filed two notices of appeal, which this Court again consolidated. One of these notices of appeal was filed before entry of a final order and was hence interlocutory