505 So.2d 489 (1987)
SOUTHERN ALLIANCE CORPORATION, Appellant,
v.
The CITY OF WINTER HAVEN, a Municipal Corporation, and Paul H. Stanley, Ron Martin, Charles Brown, Dale McDonald, Mary Mariani, Richard Murphy, and Harold Parker, Jointly and Severally, Appellees.
No. 85-2704.
District Court of Appeal of Florida, Second District.
March 18, 1987.
Rehearing Denied April 9, 1987.
*490 John V. Baum of Baldwin & Baum, Fern Park, for appellant.
Clifford J. Schott of Schott & Dale, P.A., Lakeland, for appellees.
*491 SANDERLIN, Judge.
This is an appeal from a final order which dismissed with prejudice appellant's (Southern's) second amended complaint. Essentially, the four-count complaint sought damages from appellees (the City and several of its employees) on the basis of conduct alleged to be in violation of 42 U.S.C. § 1983 (1979)[1], and 42 U.S.C. § 1985 (1980)[2]. It also asserted a common law claim for tortious interference with an advantageous business relationship. The issues presented are (1) whether the trial court erred in finding Southern's claim against the City was barred by the doctrine of sovereign immunity, and (2) whether the trial court erred in dismissing Southern's complaint against the employees. We affirm the dismissal of the 42 U.S.C. § 1985 claim and the claim for tortious interference with an advantageous business relationship. We reverse the dismissal of the 42 U.S.C. § 1983 claims, and remand for further proceedings consistent with this opinion.
The facts taken from the second amended complaint allege that Southern is the owner and proprietor of a lounge located in Winter Haven. At approximately 11:30 p.m., on September 22, 1984, Southern's chief executive officer was served with an order to cease and desist from certain violations of the City's Standard Fire Prevention Code and Life Safety Code (the Codes). The order was served after an inspection of the business premises by the police and fire departments of the City. The City had previously approved an occupancy load of 191 persons, exclusive of employees, for the lounge. The Standard Fire Prevention Code prohibits "overcrowding." Upon finding any "overcrowding." in an establishment, the Code further vests the appropriate government agency with the power to cause "the performance, presentation, spectacle or entertainment" then taking place in such establishment to be stopped until such condition is corrected. Southern was apparently in violation of this prohibition by allowing a total of 235 persons, including its employees, to enter or occupy its premises during the evening hours immediately prior to service of the cease and desist order.
The complaint further alleged that in serving the cease and desist order, the City's employees (1) surrounded the lounge with a team of approximately fifteen police and fire department officers, some of whom were dressed in riot gear, five squad cars, an emergency response van, and two police dogs; (2) entered the lounge and, without counting the numbers, directed all patrons to depart; (3) refused to answer Southern employees' questions regarding the nature of the order; (4) refused to permit the patrons to pay their bills before departing, and refused to permit Southern employees from collecting the bills; (5) accomplished the foregoing in a "rude and insulting manner," threatened to arrest anyone making inquiry into the nature of their presence, and conducted their duties *492 in a manner "totally out of proportion to the gravity of the evil they supposedly intended to remedy"; and (6) summarily closed the lounge until their permission to reopen it had been obtained.
Thereafter, the City rescinded the prior occupancy load of 191 persons, and summarily closed the lounge "until such time as a revised occupancy load for that business might be established." On September 24, 1984, appellee Stanley, the City's assistant chief of the Fire Department, informed Southern that the City had established a new occupancy load of 122 persons for the lounge, and that Southern was not to open the lounge until it was able to comply with the revised occupancy load. On the same day, Southern filed its initial complaint in the present action. On October 17, 1984, Stanley advised Southern that a second revised maximum occupancy level of 110 persons had been established for the lounge. Again, Southern was directed not to open the lounge until it was able to comply with the second revised occupancy load.
Count I of Southern's second amended complaint essentially alleged that the service of the cease and desist order was under color of state law and city ordinance, and that the manner in which the order was served violated several of Southern's constitutional rights. Specifically, Count I alleged the City, through its employees, violated 42 U.S.C. § 1983 in that: (1) the entry on and closing of the lounge was done without probable cause to believe that the City's ordinances were being violated, in violation of Southern's rights under the fourth and fourteenth amendments to the United States Constitution; (2) the removal of the patrons from the lounge without permitting Southern's employees to collect payment for the patrons' bills, and the undertaking of the actions with knowledge that such actions would cause a diminished value of Southern's business deprived Southern of property without due process of law, in violation of the fifth, ninth, and fourteenth amendments; and (3) the punitive application of the City's policies and procedures to Southern's business, under the above-described facts, constituted cruel and unusual punishment, in violation of the eighth amendment. Count I further alleged that the City's policies and the employees' actions in implementing those policies were undertaken with malice, and with a willful and wanton desire to violate and a reckless disregard for Southern's constitutional rights. The prayer for relief sought actual and punitive damages.
Count II of the second amended complaint alleged that the City, through its employees, violated 42 U.S.C. § 1983, in imposing a new occupancy limit for the lounge without prior notice or an opportunity to be heard, and in prohibiting Southern from reopening the lounge until it complied with that limit. Specifically, Southern alleged that these acts violated its rights under the fifth, eighth, ninth, and fourteenth amendments to the United States Constitution, in much the same manner as it had pleaded in Count I. Southern also alleged, as it did in Count I, that the acts were done in a malicious manner, with a willful and wanton desire to violate Southern's constitutional rights. The prayer for relief also sought actual and punitive damages.
Count III sought actual and punitive damages under 42 U.S.C. § 1985, and alleged that the employees conspired to commit the above acts, in violation of Southern's constitutional rights.
Count IV sought actual and punitive damages for tortious interference with an advantageous business relationship, and alleged that the appellees, presumably the employees, closed the lounge with the knowledge that the closing would have and did have a detrimental effect on Southern's prior advantageous business relationship with the community. Again, Southern alleged that the acts were done with malice and with a willful and wanton desire to damage its business relationship with its patrons.
On May 6, 1985, the employees filed their motion to dismiss Southern's second amended complaint, alleging that Southern failed to plead sufficient facts that would demonstrate a malicious purpose or willful and wanton conduct to support a claim for *493 punitive damages and to remove the statutory immunity of section 768.28(9)(a), Florida Statutes (1983). On May 9, 1985, the City filed a similar motion, alleging that it was immune from suit under the doctrine of sovereign immunity, and that Southern failed to plead sufficient facts to state a cause of action.
On November 20, 1985, the trial court entered its order dismissing with prejudice Southern's second amended complaint against all appellees. Specifically, the trial court found that, with respect to the employees, Southern's complaint did not contain sufficient facts demonstrating a malicious purpose or willful and wanton conduct on the part of the employees to remove the immunity provided by section 768.28(9)(a). Additionally, the trial court found that Southern failed to plead sufficient facts to support its claim that the employees committed unconstitutional acts. With respect to the City, the trial court found that under Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985), and Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979), the actions of the City were "clearly discretionary and policy making" and therefore, the City was immune from suit under the doctrine of sovereign immunity. The trial court further found that Southern's complaint failed to allege sufficient facts to support its claim against the City for unconstitutional acts. This timely appeal followed.

DISMISSAL OF CLAIMS AGAINST THE CITY
The trial court found that the City was immune from suit by virtue of the decisions in Commercial Carrier and Trianon Park. Essentially, these cases hold that despite the legislature's waiver of sovereign immunity, certain "discretionary" or "governmental" acts of a state agency do not give rise to an actionable tort. Specifically, in Trianon Park, our supreme court held that a governmental entity may not be liable to individual property owners for the negligent actions of its building inspectors in enforcing provisions of a building code enacted pursuant to the police powers vested in that governmental entity. 468 So.2d at 922. While we certainly agree that these decisions control common law tort actions or tort actions created by state statute brought against a state agency, we find that they are not applicable to an action brought against a municipality under 42 U.S.C. § 1983.
In Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which concerned a local government, the United States Supreme Court held that:
[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts ... injury ... the government as an entity is responsible under § 1983.
436 U.S. at 694, 98 S.Ct. at 2037. Further, in Owen v. City of Independence, Missouri, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Court held that under § 1983, a municipality has no immunity from damages flowing from its unconstitutional acts, 445 U.S. at 657, 100 S.Ct. at 1418, and may not assert the good faith of its officers or agents as a defense to liability under § 1983. Id. at 638, 100 S.Ct. at 1409. In Owen the Supreme Court addressed the impact of § 1983 on the doctrine of sovereign immunity, particularly the immunity for "governmental" functions:
[A]n understanding of the rationale underlying the common-law immunity for "discretionary" functions explains why that doctrine cannot serve as the foundation for a good-faith immunity under § 1983. That common-law doctrine merely prevented courts from substituting their own judgment on matters within the lawful discretion of the municipality. But a municipality has no "discretion" to violate the Federal Constitution; its dictates are absolute and imperative. And when a court passed judgment on the municipality's conduct in a § 1983 action, it does not seek to second-guess *494 the "reasonableness" of the city's decision not to interfere with the local government's resolution of competing policy considerations. Rather, it looks only to whether the municipality has conformed to the requirements of the Federal Constitution and statutes.
Id. at 649, 100 S.Ct. at 1414. Perhaps most important to the present case, the Supreme Court observed that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." Id. at 647 n. 30, 100 S.Ct. at 1413 n. 30 (quoting Hampton v. Chicago, 484 F.2d 602, 607 (7th Cir.1973)). See also Rankin v. Colman, 476 So.2d 234 (Fla. 5th DCA 1985), rev. denied, 484 So.2d 7 (Fla. 1986). Cf. Elder v. Highlands County Board of County Commissioners, 497 So.2d 1334 (Fla. 2d DCA 1986) (county does not occupy same position as state for purposes of eleventh amendment immunity, notwithstanding that a county's action is generally "state action" for purposes of fourteenth amendment and § 1983); Gamble v. Florida Department of Health and Rehabilitative Services, 779 F.2d 1509 (11th Cir.1986) (section 768.28 did not waive Florida's eleventh amendment immunity; therefore, HRS is not subject to suit in federal court for damages under § 1983).
Turning to the present case, we find that Southern's complaint sought the City's liability for its employees' actions in implementing or enforcing the City's policies, i.e., the Codes. Accordingly, under Monell and Owen, the City was not immune from suit under the doctrine of sovereign immunity for violations of § 1983. Thus, the trial court erred in dismissing Southern's complaint against the City for this reason.
The trial court further dismissed Southern's complaint on the basis that it contained insufficient facts to support its claim against the City for unconstitutional acts. In Rankin the fifth district set out the standard for pleading a cause of action under § 1983:
To adequately state a cause of action under this statute, the plaintiff must allege only that a person acting under color of state law deprived him of rights protected by the United States Constitution or federal statutes. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Complaints alleging violations of civil rights should not be dismissed unless it appears clearly that the plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim. Cruz v. Cardwell, 486 F.2d 550 (8th Cir.1973). This court must consider as true the allegations made in the complaint in considering the correctness of the trial court's order on the motion to dismiss. Hughes v. Rowe, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163, 170 (1980); Price v. Morgan, 436 So.2d 1116 (Fla. 5th DCA 1983) [,] review denied, 447 So.2d 887 (Fla. 1984). The complaint must contain ultimate facts supporting each element of the cause of action. Clark v. Boeing Co., 395 So.2d 1226 (Fla. 3d DCA 1981).
476 So.2d at 236.
In the present case, Counts I and II of Southern's complaint set forth facts which, if proven, could demonstrate that the City, through its employees, implemented and enforced the Codes (state law), which denied Southern several of its constitutional rights. See, e.g., Espanola Way Corp. v. Meyerson, 690 F.2d 827 (11th Cir.1982), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983) (hotel owner's complaint alleging that city commissioners formed a task force of building code and fire inspectors and directed it to frequently inspect designated hotels and to write numerous violations of these hotels until they were driven out of business, and as a result of these inspections, numerous building code and fire violations were cited, and which harassment caused serious loss to hotel owner of rentals, staff, and better clients, was sufficient to state a § 1983 claim based upon violation of due process of law). Accordingly, we hold that the facts alleged in Southern's complaint did *495 state a cause of action against the City under § 1983.[3]

DISMISSAL OF CLAIMS AGAINST THE EMPLOYEES
The trial court predicated its dismissal of the claims against the employees on the basis that Southern's complaint did not allege sufficient facts demonstrating a malicious purpose or willful and wanton conduct on the employees' part to remove the immunity provided by section 768.28(9)(a). This was error.
Just as the statute is no bar to an action against a municipality, it does not bar an action against the municipality's officials. In Penthouse, Inc. v. Saba, 399 So.2d 456, 458 (Fla. 2d DCA), pet. for rev. denied, 408 So.2d 1095 (Fla. 1981), this court stated:
Government officials no longer enjoy absolute immunity from personal liability for all of their official acts. As the states have gradually withdrawn the sovereign immunity of governmental units, [footnote omitted] so, too, have Congress and the federal courts narrowed the immunity of individual officials. The degree of immunity varies, depending upon the nature of the act. If an exercise of legislative or judicial power is involved, the immunity is absolute. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); Imbler v. Pachtman, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976). But the common-law doctrine of "official immunity" no longer acts as an absolute bar to the individual liability of a public officer exercising executive power. When an official, acting under color of local law, has deprived any person of a right or privilege protected by the Federal Constitution or other federal law, he can be held personally liable in damages to the injured party under section 1983 unless he pleads and establishes, as an affirmative defense, that he acted reasonably and in good faith  i.e., with a bona fide and reasonable belief in the constitutional validity of the local law he was enforcing. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
See also Arney v. Department of Natural Resources, 448 So.2d 1041 (Fla. 1st DCA 1984) ("In a 42 U.S.C. § 1983 action, state officials acting in their executive capacity to enforce the law have qualified immunity."). Further, in Gomez, the Supreme Court held that an official's qualified immunity was a defense that had to be pleaded. 446 U.S. at 640, 100 S.Ct. at 1923.
In Penthouse, the appellant had sued five county commissioners under § 1983 for withholding approval of appellant's preliminary site plan for a proposed condominium project. The theory of the appellant's recovery was that the commissioners had violated its civil right to use its land as it sees fit, so long as the use is lawful. Although this court found that the commissioners were not immune from suit under § 1983, we nevertheless affirmed the trial court's dismissal of the complaint, finding that the facts alleged in the complaint did not state a cause of action against the commissioners:
[A]ll that the fourteenth amendment guarantees is that no person shall be deprived of his property without due process of law. A duly enacted zoning measure may indeed impair property rights, but in the eyes of the law due process has been faithfully observed, and thus there has been no violation of civil rights.
Appellant's right, if any, to the approval of its preliminary site plan is embodied in the Sarasota County Zoning Ordinance, and not in the Constitution or any other federal law.
399 So.2d at 459. Unlike the appellant in Penthouse, Southern alleged in its complaint that the employees, in enforcing the Codes, closing its lounge, refusing to open the lounge, and setting new occupancy loads without notice and hearing, deprived *496 Southern of due process. Just as the Eleventh Circuit Court of Appeals found in Meyerson, we find that Southern's complaint alleged sufficient facts to state a claim against the employees under § 1983.
We now turn to Count III of the complaint which alleged that the employees engaged in conduct (conspiracy) in violation of § 1985. In Byrd v. Clark, 783 F.2d 1002 (11th Cir.1986), the court set forth the burden of stating a cause of action under § 1985(3):
In order to recover under 42 U.S.C. Section 1985(3), the plaintiff must allege and prove (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the object of the conspiracy; and (4) that the plaintiff (a) was injured in his person or property, or (b) was deprived of having and exercising any right or privilege of a United States citizen. Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The language of Section 1985 which requires an intent to deprive one of equal protection or equal privileges and immunities means that there must be some racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action. Id. at 102, 91 S.Ct. at 1798.
783 F.2d at 1007-1008. Reviewing this count with the above standard in mind, we find that Southern failed to allege that the conspiracy was the product of any racial or class-based discrimination. Accordingly, the dismissal of this claim was proper.
Finally, in Count IV of the complaint, Southern alleged that the employees tortiously interfered with an advantageous business relationship.
The elements of a cause of action for tortious interference with a business relationship are: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with that relationship by the defendant; and (3) damage to the plaintiff as a result of the breach of the business relationship. Azar v. Lehigh Corp., 364 So.2d 860 (Fla. 2d DCA 1978).
Southern alleged in Count IV of its complaint that prior to the above-described events, Southern had established and enjoyed an ongoing, advantageous business relationship with the community. It is alleged that the employees knew that closing the lounge in the manner in which they did would have a detrimental effect on Southern's business. The manner in which the employees undertook to close the lounge was alleged to have been with malicious, willful, and wanton desire to damage the value of Southern's business, and with "deliberate indifference to and reckless disregard" for Southern's right to property. Finally, the complaint alleged that Southern's business did suffer damage.
We affirm the trial court's dismissal of this count because we conclude that Southern failed to plead the existence of a business relationship under which it has legal rights. A cause of action for this type of tort has been recognized for interference with business relationships with prospective customers, as well as existing customers. See, e.g., Zimmerman v. D.C.A. at Welleby, Inc., 505 So.2d 1371 (Fla. 4th DCA 1987); Azar. We have found no case, however, which has held that a cause of action exists for the tortious interference with a business relationship with the community at large. We find no reason for extending such a cause of action in the present case.
In sum, we affirm the dismissal of Counts III and IV of Southern's complaint. We reverse that part of the trial court's order which dismissed Counts I and II, and remand with directions to reinstate those counts, and for further proceedings consistent with this opinion.
SCHOONOVER, A.C.J., and LEHAN, J., concur.
NOTES
[1] 42 U.S.C. § 1983 (1979) provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
[2] 42 U.S.C. § 1985(3) (1980) provides, in pertinent part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
[3] We do note, however, that a municipality is immune from liability for punitive damages under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).