**Bill HARPER, Jr., Plaintiff,**

v.

**Ralph KEMP, Warden, Defendant.**

**Civ. A. No. 84–24–3–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 25, 1988.

Bill Harper, Jr., pro se.

Michael E. Hobbs, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for defendant.

FITZPATRICK, District Judge.

*De Minimus Non Curat Lex* is an ancient and honorable maxim, the historical basis, one assumes, being that trifling matters must give way to more important issues. This case can only be a good example of the exception that proves the rule. A cursory examination of the file will reveal that the matter has been pending since January 6, 1984 when Plaintiff was allowed to proceed in forma pauperis. Since that date there have been a total of 49 docket entries (this Order will be the 50th and hopefully the last, but I doubt it) which cover the legal spectrum from a motion to compel production of documents to a unilateral inquiry (whatever that is); there is hardly a discovery tool or nondispositive pleading which has not been raised in this case in the past four years. The file approaches four inches in thickness and weighs in the neighborhood of ten pounds. The court shudders to think what the size would be if Plaintiff were free to take depositions.

What grave injustice has Plaintiff been threatened with that requires this much attention? What arcane points of law are raised in scholarly debate within the aforesaid ten pounds of documents? Is plaintiff a victim of a modern star chamber? Well, this marathon battle which has consumed in excess of 50 hours attorney time on the part of Defendant warden, in excess of 25 hours court time (Magistrate and District Court), and who knows how many hours time on the part of Plaintiff, who is proceeding *pro se* and probably had nothing better to do, is all about what happened to Plaintiff's civvies when he was admitted to the Georgia Diagnostic and Classification Center (GDCC) at Jackson, Georgia after his conviction for two counts of kidnapping, one count of aggravated sodomy, one count

of armed robbery and one count of rape, for which he is expected to serve a minimum of life imprisonment.

Specifically, Plaintiff sued because of the alleged destruction of one pair of blue jeans, a T-shirt, a pair of tennis shoes, a pair of nylon drawers, two ink pens and two *Ebony* magazines. The total value is alleged by Plaintiff to be $73.50. It is stated that because Plaintiff was financially unable to mail his aforesaid personal possessions home that the prison officials subsequently destroyed the property in accordance with the policies and procedures then in effect at the GDCC.

In particular, Plaintiff is claiming money damages under 42 U.S.C. § 1983 for the alleged wrongful taking of his property. Plaintiff's claims for declaratory and injunctive relief were dismissed without prejudice by this court's Order of December 12, 1986. Both parties moved for summary judgment on the money damage claim. As this case does not raise an issue as to any material fact, summary judgment is proper.

In a well-reasoned Recommendation, the Magistrate determined that the taking of Plaintiff's personal property, which occurred at the time Plaintiff was being processed into a penal institution, did not result in a violation of Plaintiff's constitutional due process rights. The Magistrate noted that Plaintiff's personal clothing was replaced by clothing given to him by the institution, and therefore, Plaintiff suffered no pecuniary loss from the taking of his clothing. Plaintiff's net loss for the two ink pens and two *Ebony* magazines was $3.00. The Magistrate concluded that section 1983 does not contemplate the recovery of such a *de minimus* loss on the basis of a constitutional deprivation of property.

Relying on *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Magistrate further noted that even if the taking of Plaintiff's property resulted in a constitutional violation, Defendants in this action were entitled to invoke the affirmative defense of qualified immunity to defeat Plaintiff's claim. As recognized by the Magistrate, since the law governing the requirements of due process in cases such as this one is unsettled, it cannot be said that Defendants knew or should have known that their action, taken within the sphere of their official responsibility, would have been violative of Plaintiff's constitutional rights. Moreover, since the evidence showed that Defendants did not maliciously intend to deprive Plaintiff of his constitutional rights, the defense of qualified immunity was available to them.

The Supreme Court held in *Wolff v. McDonnell* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that a prisoner does not lose all his constitutional rights when he is imprisoned for a crime. As Justice White so eloquently said: "[t]here is no iron curtain drawn between the Constitution and the prisons of this country" and, of course, he is right. There must be, however, some category of "rights" that are so insignificant that they must give way to the demands of a court system that is burgeoning with cases that do involve significant violations of the Constitution and other important matters involving large sums of money. Surely some better system than a full fledged lawsuit in federal court can be devised to account for dealing with lost blue jeans, confiscated magazines or availability of preferred musical programming. This is not an isolated case; there have been others and there will be more unless some needed changes can be made in the procedure. Apparently, only the Congress of the United States can address this problem and it is urged by this Judge that it do so soon.

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Justice (now Chief Justice) Rehnquist, in reciting the facts which involved the alleged negligent loss of a hobby kit worth $23.50, raised the question of whether cases such as this should be in federal court.[1] He concluded that since 28 U.S.C.

---

1. This court notes that very recently in *Daniels v. Williams,* 474 U.S. 327, 336, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986), the Supreme Court held that the negligent acts of state officials

§ 1343 contained no minimum dollar limitation, the claim was proper under 42 U.S.C. § 1983. It is clear that 28 U.S.C. § 1343 does allow a claim for *any amount* so long as the other requirements are met. Surely, a simple amendment to the law setting a minimum jurisdictional amount in property damage cases of $250.00 or $500.00 would not unduly penalize one who feels aggrieved but has enough at stake to justify the considerable cost to the courts, and ultimately to society, to have the matter litigated in federal court. A statute should be broad enough to address the wrongs contemplated thereby, but should not be a vehicle for insignificant and frivolous law suits. As Don John said to Borachio:, "[w]ill it serve for any model to build mischief on?"[2] In its present form, section 1343 is a perfect model for all the mischief an idle mind can conjure.

For the reasons stated above, this court hereby adopts and incorporates the Recommendation prepared by United States Magistrate Claude W. Hicks, Jr. in this action.[3] Accordingly, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## APPENDIX A

Proceedings Under 42 U.S.C.A. § 1983
*Before the U.S. Magistrate*

CLAUDE W. HICKS, Jr., United States Magistrate.

## RECOMMENDATION

In June of 1983, plaintiff BILL HARPER, JR., together with Howard Michael Dials, Bobby White and Glenn E. Moran, forwarded a petition under 42 U.S.C.A. § 1983 to the Clerk of this court for filing, requesting that they be allowed to proceed *in forma pauperis*. By order of this court filed January 6, 1984, plaintiffs' complaint was ordered filed "with the understanding that this case may subsequently be dismissed should the court later determine that 'the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.' 28 U.S.C.A. Sec. 1915(d)."

On November 24, 1986, the undersigned magistrate issued an "Order, Findings and Recommendation" in this case. The recommendations of the magistrate were adopted by the Honorable Duross Fitzpatrick, District Judge, in an order entered December 12, 1986. The claims of plaintiffs Howard Michael Dials, Bobby White and Glenn E. Moran were dismissed; the claims of plaintiff BILL HARPER for injunctive and declaratory relief were dismissed without prejudice to his right to refile in the event he was ever returned to the Georgia Diagnostic and Classification Center in Jackson, Georgia. Only the claim for money damages of plaintiff HARPER was left for further consideration by the court.

The parties were given notice in the court's December 12, 1986 order that plaintiff's motion for summary judgment and defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure would both be treated as motions for summary judgment. Under the magistrate's recommendation, the parties were given time to file responses to these motions. Judge Fitzpatrick's order provided that these motions for summary judgment

---

which cause unintended loss of or injury to a prisoner's life, liberty or property, do not implicate the Due Process Clause of the fourteenth amendment. Notwithstanding the *Daniels* decision, however, a prisoner still may bring a claim for an intentional deprivation of property under the fourteenth amendment, even though such claim may be based on a *de minimus* pecuniary loss. Therefore, the *Daniels* decision does not address the type of abuse that occurred in the case presently before this court since Plaintiff herein claims an intentional deprivation of property by those officials at the GDCC. Although the *Daniels* holding is a step in the right direction in curbing the number of deprivation

of property claims that will now be actionable under the fourteenth amendment, it is the opinion of this Judge that section 1343 should be amended to provide a jurisdictional amount for intentional deprivation of property claims, and thereby further limit the number of fourteenth amendment claims that can be brought in federal court.

**2.** *Much Ado About Nothing*, Act 1 Scene 3.

**3.** The Magistrate's Recommendation is attached hereto as Appendix A.

would be considered by the magistrate in accordance with 28 U.S.C. § 636(b)(1).

A review of the file in this proceeding reveals that no further pleadings and/or documentation have been filed in this case since the entry of Judge Fitzpatrick's order of December 12, 1986, eleven months ago. Accordingly, the magistrate will now move to consider the motions for summary judgment of both plaintiff and defendants pursuant to the referral of said matter to him on the assumption that neither plaintiff nor defendants desire to supplement the matters already on record herein.

Rule 56(c) of the Federal Rules of Civil Procedure provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The relevant facts of this case are undisputed. In 1983 when plaintiff BILL HARPER, JR. was admitted to the state prison system at the Georgia Diagnostic and Classification Center at Jackson, Georgia, certain personal property was taken from him by prison officials. This property consisted of a pair of bluejeans, a T-shirt, a pair of shoes, a pair of nylon underwear, two ink pens, and two *Ebony* magazines. These items were subsequently destroyed by prison authorities in accordance with policies and procedures in effect at that time due to the fact that plaintiff HARPER was financially unable to mail the property to his home. It is undisputed that HARPER had only twenty cents ($.20) on his person when he was processed in at Jackson.

On August 1, 1983, the Department of Corrections implemented a written policy and procedure for the handling of the property of inmates being processed in for the service of prison sentences. Under that policy, each inmate's personal property is inventoried and unauthorized items are either destroyed, donated to charity, or mailed to someone at the direction of the inmate. In some cases, however, "property of value" is stored for the inmate. Inmates are allowed to mail home such stored items of value; in the event the inmate does not have sufficient funds for postage, the property is retained until he can obtain funds for postage, until the property can be picked up at visitation by a relative, or until the inmate departs the institution, at which time the property is returned to him.

The taking of personal property complained about by plaintiff HARPER occurred in June of 1983 prior to the implementation of the *written* policy and procedure outlined above. However, defendants admit that a similar *verbal* policy was in effect at the Georgia Diagnostic and Classification Center at the time plaintiff's property was taken from him. (See defendants' response to plaintiff's first interrogatory no. 8).

Plaintiff contends that the total value of the personal property taken from him and destroyed by state authorities is $73.50. Apparently, prison authorities who confiscated and destroyed these items of property did not deem them to be "property of value" entitled to be stored until plaintiff could determine how best to send them home. Though plaintiff lacked the funds necessary to mail home his property, no effort was made to store plaintiff's property and no time was allowed for him to accumulate any money for the postage required or for him to make arrangements for someone to pick up the property from the prison.

## DISCUSSION

The court has carefully considered the argument of both plaintiff and the defendants herein regarding the entitlement of each to a summary judgment. This case deals with an action on the part of defendants employed by the State of Georgia which was *authorized* by state policy and procedure, to-wit: the verbal policy in place at the Georgia Diagnostic and Classification Center at the time plaintiff was processed in. Defendants contend that this case is governed by the pronouncements of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v.*

*Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). This court disagrees. *Parratt* and *Hudson* deal only with actions *unauthorized* by the state, not with actions *authorized* by the state.[1] Neither the Supreme Court nor the Court of Appeals for this circuit has dealt with authorized state actions such as that complained of in this case. For that reason, this court finds defendants' argument for dismissal of plaintiff's case under *Parratt* and *Hudson* to be without merit. This compels an examination of plaintiff's due process rights by this court.

*Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2974–2975, 41 L.Ed.2d 935 (1974) spoke of the rights and privileges of prisoners:

Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retrac-

tion justified by the considerations underlying our penal system" (cit. omitted). But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country. Prisoners have been held to enjoy substantial religious freedom under the First and Fourteenth Amendments (cit. omitted). They retain right of access to the courts (cit. omitted). Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race (cit. omitted). Prisoners may also claim the protections of the Due Process Clause. They may not be de-

---

1. Even if the holdings of *Parratt v. Taylor* and *Hudson v. Palmer* were found to cover an authorized state action, such would not authorize a dismissal of plaintiff's complaint under the circumstances of this case. *Parratt* held that *negligent* deprivations of property are not actionable under 42 U.S.C. § 1983 because such deprivations do not violate the Due Process Clause of the Constitution; *Hudson* extended *Parratt* to unauthorized *intentional,* i.e., non-negligent, deprivations of property by an employee. Where a loss of property occurs by a random, *unauthorized* act by a state employee rather than by an established state procedure, the state cannot predict when such a loss will occur, thereby making a predeprivation hearing or procedure impracticable. In cases where predeprivation process is not feasible, the appropriate analysis for a procedural due process claim focuses on *post* deprivation remedies. If the state affords an adequate postdeprivation remedy, the requirements of due process will be satisfied and no claim under § 1983 will lie.

In the instant case, *pre* deprivation process was not, and cannot feasibly be, made available to an inmate under the procedure used by the state for in-processing its prisoners. It would not be practicable to require that in-processing be halted for a hearing to determine what is to happen to personal property taken from an incoming prisoner every time some dispute arises over the right to keep a shirt or pair of trousers. Therefore, consideration must be given to the adequacy of state *post*-deprivation remedies, if any.

Defendants contend that in the instant proceeding, plaintiff HARPER has an adequate *post* deprivation remedy under Georgia law in that he may sue defendants in the state courts and recover any damages due to him for the loss of

his personal property. Therefore, they argue, he has no claim under § 1983 and his complaint should be dismissed. This court agrees that there are provisions under state law permitting an inmate to seek damages for the loss of his property and that such would normally satisfy the requirement of *Parratt* and *Hudson* that an adequate postdeprivation remedy be available, mandating a dismissal of this case. However, due to the passage of time since the filing of plaintiff's complaint and the consideration of the motions herein by this court, plaintiff no longer has a remedy under state law for the loss of his personal property. § 9–3–32 of the Official Code of Georgia Annotated provides: "Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues. (Ga.L.1855–56, p.233, § 2; Code 1933, § 3–1003)." Under *Brown v. Pearson,* 171 Ga.App. 576, 320 S.E.2d 570 (1984), the filing of a federal lawsuit does *not* toll the running of the statute of limitations for the alleged conversion of personal property. Thus, it appears that the Georgia statute of limitations on such actions would prohibit plaintiff HARPER from now maintaining a lawsuit against defendants in the state courts if this court dismisses this action.

Were *Parratt* and *Hudson* applicable to the instant proceeding (and this court has determined that they are not), the viability of plaintiff's claim would depend on whether his postdeprivation remedy is adequate to satisfy due process. Under the analysis set forth above, this court would be compelled to find that it is not and would have to proceed to an examination of the substance of plaintiff's due process complaints in the same manner as if *Parratt* and *Hudson* were not applicable.

prived of life, liberty, or property without due process of law (cit. omitted).

Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed (cit. omitted).... *In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.* (emphasis added)

Plaintiff herein contends that his due process rights were violated when prison officials took from him certain items of personal property during his in-processing at the Georgia Diagnostic and Classification Center. That the items were taken and destroyed is not disputed. But the record herein also clearly shows that the taking of property was in the context of processing the inmate into a penal institution.

In considering the right of plaintiff HARPER under the Constitution to possess his personal property and the needs and objectives of the prison authorities to provide for the orderly institutionalization of new inmates, the procedures used by prison officials in disposing of "property of little value" must be balanced with the right of the prisoner to his personal property. Penal institutions have requirements as to uniformity of dress among inmates. For health and security reasons (as well as for other reasons), all prisoners are required to wear prison clothing. A balancing of interests is therefore required to insure that the prisoner's rights are not unduly restricted by a legitimate state interest in maintaining a proper prison environment.

Of the items taken from plaintiff HARPER at in-processing, the pair of bluejeans, T-shirt, pair of shoes, and pair of nylon underwear were replaced at the time of taking by clothing issued by the institution. Though plaintiff had a property interest in the items replaced susceptible to protection under the Constitution, it can be argued that he suffered no pecuniary loss from the taking of his clothing when the state simultaneously provided replacement clothing. Plaintiff's own complaint sets forth a value of $3.00 for the remaining items complained of, to-wit, two ink pens and two *Ebony* magazines. In the court's view, § 1983 does not contemplate the recovery of such a *de minimus* loss on the basis of a constitutional deprivation of property.[2]

Defendants have also raised an affirmative defense of qualified immunity in this proceeding. They contend that in carrying out the policy and procedure of the state, they have "at all times acted in good faith and with reasonable reliance upon the rules and regulations of the Department of Offender Rehabilitation applicable to the Georgia Diagnostic and Classification Center, Jackson, Georgia" (TENTH DEFENSE).

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2736–2737, 73 L.Ed.2d 396 (1982), the Supreme Court observed:

> Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed. 2d 572 (1980). Decisions of this Court have established that the "good faith" defense has both an "Objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The subjective component refers to "permissible intentions." *Ibid.* Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he

---

**2.** It is significant to note that prison policy now in place seeks to provide additional safeguards where "property of value" is taken by allowing additional time to the prisoner for him to make arrangements to have his property removed.

took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury...." *Ibid.* (emphasis added).

Neither the Supreme Court nor the Court of Appeals for the circuit has yet addressed the rights of a prisoner to personal property in the context of a deprivation such as that complained of herein. In light of the fact that the law is unsettled as to the requirements of due process in such cases, it cannot be said that the defendants herein knew or reasonably should have known that the action they took within their sphere of official responsibility would violate the constitutional rights of the plaintiff. The evidence before the court does not indicate that defendants took plaintiff's property "with the malicious intention to cause a deprivation of constitutional rights or other injury." Thus, in addition to the finding herein that plaintiff's due process rights have not been violated, this court also finds that the defense of "qualified immunity" is available to defendants herein to defeat plaintiff's claim.

In light of the foregoing, IT IS THE RECOMMENDATION of the undersigned that the motion for summary judgment of plaintiff BILL HARPER, JR. be DENIED and that the motion for summary judgment of the defendants be GRANTED, there being no genuine issue as to any material fact and said defendants being entitled to a judgment herein as a matter of law.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the Honorable Duross Fitzpatrick, United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

SO RECOMMENDED, this 23rd day of November, 1987.