van Gestel, J.
This matter is before the Court following the receipt of plaintiffs Memorandum in Response to Court’s Order Contemplating Dismissal on De Minimus Grounds.[1] For the reasons that follow, this Court orders dismissal of the complaint on de minimus grounds.
BACKGROUND
On August 9, 1996, the plaintiff, Shamir Khalif Rashad (“Rashad”), filed his complaint in this action. The complaint was accompanied by an affidavit of indigency, pursuant to which Rashad was excused from paying the regular civil filing fee of $185.00.
Rashad’s complaint seeks relief pursuant to G.L.c. 258 against the Commonwealth of Massachusetts (the “Commonwealth”) for the negligence of some of its employees. Rashad was, at all times in issue, and still is, a prisoner incarcerated at the North Central Correctional Institution (“NCCI”) at Gardner, Massachusetts. The state workers charged were employed by the Department of Correction at NCCI.
Rashad alleges that in December 1994, during a time that he was placed in the segregation unit on “awaiting action status," prison employees put his personal properly in the facility's long-term storage area. When he was released from segregation, Rashad discovered that his watch was damaged and his “New Balance 998" sneakers were missing. He values the watch at $38.00 and claims to have paid $70.00 for the sneakers. Thus, his complaint seeks judgment in the amount of $108.00.
The Commonwealth has claimed a trial by jury.
Apparently, a proper c. 258 presentment of the claim was made by Rashad to the Secretary of Public Safety on July 8, 1995. At least the Commonwealth has raised no defense in its answer on the issue of failure to make a proper presentment.
On April 22, 1999, Judge Gants suggested to the parties that they make an effort to settle this case and, failing that, to report for a further status conference in anticipation of a trial by jury on August 16, 1999. Pursuant to Judge Gants’s suggestion, the Commonwealth, on April 23, 1999, offered to settle for $65.00.[2] Rashad characterized the Commonwealth’s offer as “ridiculous” [sic], and demanded a trial.
This Court, upon reviewing the current status of this case — a claim for negligence for the loss of and *283 damage to personal property valued by the claimant at $108.00, for which a $65.00 settlement offer was proposed and rejected — on May 17, 1999 ordered the parties to submit “such memoranda as either may choose addressing the position of why this case ought not be dismissed on the de minimus doctrine.” The Court, in its order, further advised that on receipt of the memoranda, it would “also consider dismissal on review thereof without oral or other argument thereon.” See Order dated May 17, 1999 (paper #12).
As noted in footnote 1 above, only Rashad submitted a memorandum responding to the Court’s request. The essence of Rashad’s position is basically that nothing — least of all his claim for lost property — is de minimus.
DISCUSSION
The Court begins by stating the obvious. Rashad makes a civil claim for negligence against the Commonwealth pursuant to G.L.c. 258, the Massachusetts Tort Claims Act. His claim, if proved, will result in a judgment for money damages in the maximum amount of $108.00 for a lost pair of sneakers and a damaged watch. Rashad, in response to a July 22, 1997 request of the court (Lopez, J.), estimated that a jury trial of his case would take two days. Rashad is still a prisoner at NCCI and would, therefore, have to be transported to the court, under guard, pursuant to a habeas corpus order.
The Commonwealth has demanded a jury trial.
Perhaps less obvious is the fact that the Commonwealth is entitled to have Rashad’s case tried in the Superior Court. G.L.c. 258, Sec. 3, provides that:
All civil actions brought against a public employer on a claim for damages cognizable under this chapter shall be brought ... in the couniy where the claimant resides or in Suffolk County. The superior court shall have jurisdiction of all civil actions brought against a public employer.. .
(Emphasis added.) See also Wetherell v. Boston Mut. Life Ins. Co., 18 Mass.App.Ct. 614, 616 (1984).
For the foregoing reasons, this Court faces a two-day trial with a pro se prisoner-plaintiff who must be guarded at all times, transported to the court in Cambridge from the prison in Gardner, and fed while he is here. Twelve citizens, as jurors, must be compelled to give of their time for those two days, at an indeterminate cost to each juror personally and, in many instances, to their employers — all to recover $108.00.
What is not so obvious is the cost of this trial to the taxpayers of Massachusetts. Although this Court is not able to provide precise figures, a recent decision by a former member of the Superior Court, now the Chief Judge of the U.S. District Court in Boston, illuminates the subject. See Specialized Plating, Inc. v. Federal Environmental Services, Inc., 975 F.Supp. 397 (D.Mass. 1997). In Specialized Plating, Judge Young had occasion to explain the details of his assessment of costs of a jury trial in the Federal Court in Boston. Included in Judge Young’s opinion is a description of a 1985 analysis of costs in the Superior Court and in Massachusetts state courts in general. Judge Young, applying the Massachusetts study and his own experience on the Superior Court, concluded that in 1985 the per-day cost for a civil judicial session in a Massachusetts state court was $2,964. He also suggested, quite credibly, that the cost would be significantly higher for a criminal trial.
It seems fair to presume that costs to run Massachusetts civil court sessions have increased since 1985. Also, Rashad’s case has the expensive overtones of a criminal case because of his status as a prisoner. This Court, therefore, does not feel that it would be at all out of line to estimate a daily cost for the Rashad jury trial at something in the vicinity of $6,000 to $8,000. And this estimate does not include any factor for the pro rata cost of maintaining and operating the building at 40 Thorndike Street in Cambridge or the unmeasureable and intangible costs to jurors and their employers. Thus, if the Rashad case lasts the two days he predicts, the total cost, on a conservative basis, could well be in the $12,000 to $16,000 range.
In addition to the raw costs involved, there is another intangible but very important factor to consider. For two days Court Room 7B will be tied up on the Rashad case and, consequently, not available to hear other more significant matters.
“What we in courts do, and how we do it, is seen not only by the litigants before us, but by the entire community.” Hennessey, Edward F., “Judges Making Law,” Flaschner Judicial Institute, Inc., Boston (1994), p. 66.
To consume all of this judicial time and spend all of this public money in order to decide if a litigant is entitled to a maximum of $108.00 for a lost pair of sneakers and a damaged watch must rightly be seen as an absurd and outrageous waste to the general public, which must foot the bill. The situation makes a mockery of the Judicial Branch and trivializes its significance within the community from which it expects respect, obedience and support.
The ancient and honorable maxim de minimus non curat lex commands that trifling matters must give way to more important issues. It has a role to play here.
Despite Rashad’s protestations to the contrary, there is no constitutional issue at stake. In Daniels v. Williams, 474 U.S. 327 (1986), the Supreme Court, in a case with more than a few parallels to Rashad’s, held that “the Due Process Clause is simply not implicated by a negligent act of an official causing unintentional loss of or injury to life, liberty, or property.” Id. at 328.
*284 Justice Rehnquist, speaking for a unanimous Court, said, at p. 332:
We think the actions of prison custodians in leaving a pillow on a prison stair or mislaying an inmate’s property are quite remote from the concerns [protected by the Due Process Clause of the Fourteenth Amendment). Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.
There is more than a particle of irony in permitting the Commonwealth to intentionally lock a man in a cell for years, but be held to provide that same man with the full trappings and huge expense of a Superior Court jury trial for negligently losing his sneakers.
[A] state policy that defeats recovery does not, in itself, carry [the] consequence [of being constitutionally defective]. Those aspects of a State’s tort regime that defeat recovery are not constitutionally invalid, so long as there is no fundamental unfairness in their operation. Thus, defenses such as contributory negligence or statutes of limitations may defeat recovery in particular cases without raising any question about the constitutionality of a State’s procedures for disposing of tort litigation.
Daniels, supra, 474 U.S. at 342 (Stevens, J. concurring).
Experience with the Massachusetts Constitution, particularly Part 1, Art. 11,[3] has been quite similar.
It seems appropriate here to begin by noting that the very statute that provides the base for Rashad’s claim, G.L.c. 258, the Massachusetts Tort Claims Act, was itself a relatively recent legislative modification of centuries of fully constitutional barring of claims against the government by the doctrine of sovereign immunity.
Other examples of laws that bar or limit recovery for claims, and are not deemed unconstitutional, abound. See, e.g., Paro v. Longwood Hospital, 373 Mass. 645, 654-55 (1977) (medical malpractice screening); Pinnick v. Cleary, 360 Mass. 1, 11-12 (1971) (no-fault auto insurance); Colby v. Carney Hospital, 356 Mass. 527, 528 (1969) (charitable immunity); Plummer v. Gillieson, 44 Mass.App.Ct. 578, 583 (1998) (medical malpractice statute of repose). None of these, and there are many more, was found repugnant to Part 1, Art. 11 of the Massachusetts Declaration of Rights.
“Protected property interests are not created by State or Federal Constitutions, but are instead ‘created ... by existing rules or understandings that stem from independent sources such as state law.’ ’’ Take Five Vending, Inc. v. Provincetown, 415 Mass. 741, 747 (1993).
Not all property interests deserve constitutional protection. Courts have long recognized that de minimus property interests do not trigger procedural due process protection.
Dill v. City of Edmond, Okla., 155 F.3d 1193, 1207 (10th Cir. 1998).
This Court joins with Federal District Judge Fitzpatrick in Georgia when he implores:
There must be... some category of “rights” that are so insignificant that they must give way to the demands of a court system that is burgeoning with cases that do involve significant violations of the Constitution and other important matters involving large sums of money. Surely some better system than a full fledged lawsuit in Federal Court [or the Superior Court] can be devised to account for dealing with lost blue jeans, confiscated magazines or availability of preferred musical programming. This is not an isolated case; there have been others and there will be more unless some needed changes can be made in the procedure.
Harper v. Kemp, 677 F.Supp. 1213, 1215 (M.D. Ga. 1988).
To this Court, the de minimus maxim ought to suffice, at least for this case. For others like it, however, the General Court ought to consider the situation and revise G.L.c. 258 in some appropriate way that protects the Superior Court from being distracted and diverted from its important mission as the Great Trial Court of Massachusetts.
ORDER
For the reasons stated above, this Court finds this case to fall squarely within the confines of the maxim de minimus non curat lex and, therefore, orders it DISMISSED.

 Although both parties were invited to brief the issue, nothing has been received from the defendant.

 The letter making the offer included appropriate language that it “does not reflect any question as to the truth of [Rashad’s] allegations, rather it is because the inventories reflect [that Rashadl received one pair of sneakers and [Rashad] testified that [he] has no idea where [his] watch is.”
In fact, with regard to the watch, the Court notes that in the pleadings folder is an envelope addressed to the Clerk’s Office, referring to this case, designated “Exhibit A” in which is a watch of undetermined make, with a smashed crystal and showing other damage .The envelope containing the watch bears the printed return address of “North Central Correctional Institution, P.O. Box 466, Gardner, MA. 01440.”

 “Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without delay; conformably to the laws.”