Kim RASCHE, Appellant

v.

Dr. Sheldon H. BERMAN, Superintendent, Jefferson County Public Schools, Individually; Michael Mulheirn, Executive Director of Facilities and Transportation, Jefferson County Public Schools, Individually; Joseph Hardesty, Chairman, Jefferson County Public Schools, Individually; Charles Fleischer, Director of Safety, Environmental, and Housekeeping Services, Jefferson County Public Schools, Individually; Raymond Patterson, Director, General Mainte-nance, Renovations and Grounds Department, Jefferson County Public Schools, Individually; Clark Deberko, Manager of General Maintenance/Preventive Maintenance, Jefferson County Public Schools, Individually; Mike Rueff, Manager of Maintenance Scheduling/Quality Control/Customer Service, Jefferson County Public Schools, Individually; James Fegenbush, Manager of Grounds, Jefferson County Public Schools, Individually; Wayne Cosby, Grounds Foreman, Jefferson County Public Schools, Individually, and William Kaufman, Tractor Services Foreman, Jefferson County Public Schools, Individually, Appellees

NO. 2012–CA–001766–MR

Court of Appeals of Kentucky.

RENDERED: MAY 20, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Brian D. Cook, Louisville, Kentucky

BRIEF FOR APPELLEES: C. Tyson Gorman, Emily C. Lamb, Louisville, Kentucky

BEFORE: J. LAMBERT, KRAMER, AND VANMETER, JUDGES.

*OPINION*

J. LAMBERT, JUDGE:

Kimberly Rasche appeals from the Jefferson Circuit Court's entry of summary judgment in favor of the Appellees. The Appellees are various employees of the Jefferson County Board of Education and district employees who were sued in their individual capacities. The trial court held that the Appellees were entitled to qualified immunity and entered summary judgment in their favor. Upon initial review, this Court affirmed the summary judgment entered by the trial court. Rasche sought discretionary review from the Supreme Court of Kentucky, which granted discretionary review, vacated this Court's decision, and remanded for further consideration in light of *Marson v. Thomason*, 438 S.W.3d 292 (Ky.2014). Upon consideration of *Marson* and supplemental briefing by the parties, we again affirm the summary judgment entered in favor of the various school employee defendants below.

On the morning of February 13, 2008, Rasche drove to Butler High School (Butler) to take her daughter to school and spend the day volunteering in the school office. Due to snowy and icy conditions, all schools in the Jefferson County Public School System were operating on a two-hour delay. Rasche arrived at Butler's parking lot at approximately 9:15 a.m. and parked her car in the closest available spot to the door in the front visitor parking lot. It was already light outside by that time, and it was not snowing or sleeting. Rasche claims the parking lot at Butler was "visibly icy," but nevertheless she proceeded to walk across the icy portion of the parking lot toward the main office door. As Rasche crossed the parking lot, she slipped on the ice and fell. Rasche claims she injured her wrist in this fall.

On February 13, 2008, the Jefferson County Board of Education (JCBE) was working to clear accumulating snow and ice from school parking lots within the district. Appellees Michael Mulheirn (Mulheirn), Executive Director of Transportation and Facilities; Ray Patterson

(Patterson), JCBE's Director of General Maintenance, Renovation & Grounds; Jim Fegenbush (Fegenbush), JCBE's Manager of Grounds; Wayne Cosby (Cosby), former Foreman of Grounds; and Bill Kaufman (Kaufman), retired Foreman of Tractor Services, were responsible for coordinating and supervising JCBE's snow removal efforts.

Sometime during the night of February 12, 2008, and into the morning of February 13, 2008, JCBE's employees Robert Neval (Neval) and Aron Phelps (Phelps), neither of whom are parties to this action, salted the parking lot at Butler. According to their deposition testimony, Neval drove the truck while Phelps operated the controls in the truck that scattered the salt onto the parking lot. Neval testified that the salt truck was operating properly and that they salted the entire area of Butler's two parking lots.

Rasche filed suit regarding her alleged injury on February 11, 2009, claiming that the Appellees negligently failed to cancel school on February 13, 2008, and negligently failed to maintain Butler's parking lot in a reasonably safe condition on the day in question. The Appellees moved for summary judgment, asserting that Rasche's negligence claims failed as a matter of law because they have qualified official immunity based on their discretionary duties, and that they did not owe Rasche a duty of care under the open and obvious doctrine. In her response, Rasche argued that the Appellees were not entitled to qualified official immunity because the maintenance of Butler's parking lot and the decision whether to cancel·school on February 13, 2008, were ministerial duties. Rasche further argued that there was a question of fact as to whether the Appellees used reasonable care to clear Butler's parking lot despite the admittedly open and obvious nature of the ice on which Rasche fell.

On September 9, 2012, the trial court entered summary judgment in favor of the Appellees. The court held that the Appellees were immune from Rasche's claim that they negligently failed to cancel school, reasoning that the decision whether to close Jefferson County Public Schools is clearly an act involving the exercise of discretion and judgment. The court further noted that none of the named Appellees were responsible for performing the ministerial act of physically clearing the parking lots. Rather, the court found that the Appellees, as supervisors overseeing the district's snow removal efforts, had to exercise discretion as to when and how to maintain and evaluate the constantly changing conditions of numerous school parking lots given limited time and resources. Accordingly, the trial court granted summary judgment in the Appellees' favor on immunity grounds. Because the trial court determined that the Appellees were entitled to qualified immunity, it did not reach the issue of whether the ice on the parking lot was an open and obvious condition.

Initially in her appeal to this Court, Rasche argued that the Appellees' acts, omissions, and decisions were ministerial in nature, and therefore the shield of qualified immunity would not apply to them. The Appellees countered that their actions were discretionary, and thus they are entitled to immunity.

Rasche argued in her original briefs to this Court that the acts performed by the Appellees are ministerial in nature because the Appellees did not have a choice to clear the subject parking lots, but were required to do so as part of their jobs. Rasche contended that there were specific policies and procedures to be followed in order for the parking lots to be cleared

properly, and that following such policies and procedures did not require any discretion. The Appellees argued that they do not follow specific policies and guidelines during snow removal operations. Rather, they contended that every snow event is different, and their responses to snow and ice accumulation really depend upon the circumstances.

The Appellees pointed out that only five of the named Appellees were even involved with JCBE's snow removal operations in February 2008. Mulheirn, as Executive Director of Facilities and Transportation and, is responsible for overseeing snow and ice removal operations for the parking lots and driveways of each school within the District. Mulheirn testified that he was entitled to make policy decisions regarding snow and ice removal. Mulheirn testified that he does not manage and coordinate JCBE's snow removal efforts alone. He delegates decision making authority to Appellees Patterson and Fegenbush. When asked about Fegenbush's and Patterson's respective roles in overseeing snow removal operations, Mulheirn testified that he does not always know how they delegate work because both have the authority and responsibility to decide how to implement snow removal operations. Patterson and Fegenbush are not the only supervisors tasked with deciding how to implement and oversee snow removal. They, along with Appellees Cosby and Kaufman, work together to decide how to best clear the school parking lots given the unique facts of each weather event, JCBE's limited resources, and the changing and uncertain weather conditions.

The record reflects that during snow/ice removal operations, Cosby and Kaufman work alternating twelve hour shifts under the supervision of Patterson and/or Fegenbush to manage snow and ice removal operations from a central location at JCBE's Dawson Garage. Fegenbush, Cosby, and/or Kaufman work together with Patterson and/or Mulheirn to determine what precise snow removal method is appropriate given current and forecasted weather conditions. They then decide how best to coordinate JCBE's limited manpower and resources to effectuate snow removal. Cosby and/or Kaufman, either directly or through their subordinate lead men (who are not parties to this action), then communicate with the individual drivers assigned to plow and/or salt certain school parking lots and maintain lists to ensure that all schools are completed.

The trial court held that these lower level employees were the only employees whose snow removal efforts could possibly be considered ministerial functions. These employees were not named in the complaint. Rasche argued that she originally named these and other defendants responsible for actually salting and plowing the parking lot as "unnamed defendants," and that Appellees' counsel informed Rasche that two individuals were responsible for salting and plowing the lot on the night before the incident. However, counsel for Appellees later stated that those individuals only salted the lot, and JCBE was unsure who plowed the lot. Rasche claims she was not able to name all the relevant individuals involved in salting and plowing the lot due to the Appellees' inability to produce the relevant information that would have identified them.

In our initial review of this case, we relied on the Kentucky Supreme Court's articulation of sovereign immunity in *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), in determining that the Appellees were entitled to qualified immunity. We reviewed the trial court's entry of summary judgment *de novo* and affirmed. *See 3D Enter. Contracting Corp. v. Louisville*

*& Jefferson County Metro. Sewer Dist.,* 174 S.W.3d 440, 445 (Ky.2005).

"Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick,* 874 F.2d 374 (6th Cir.1989). Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity as discussed in Part I of this opinion, *supra.* Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled, as discussed in Part II of this opinion, *supra.* But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am. Jur.2d, *Public Officers and Employees,* § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id.* § 309; Restatement (Second) Torts, *supra,* § 895D cmt. g. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. *Franklin County v. Malone, supra,* [957 S.W.2d] at 201 [(1997)] (quoting *Upchurch v. Clinton County,* 330 S.W.2d 428, 430 (1959)). Qualified official immunity is an affirmative defense that must be specifically pled. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.,* one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. *Franklin County v. Malone, supra,* at 201. "That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." *Upchurch v. Clinton County, supra,* at 430. *See also* Restatement (Second) Torts, *supra,* § 895D cmt. h; 63C Am.Jur.2d, *Public Officers and Employees,* §§ 324, 325 (1997).

*Yanero,* 65 S.W.3d at 521–22.

We found the facts of this case to be analogous to *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.,* 286 S.W.3d 790 (Ky.2009), in which the Kentucky Supreme Court held that a fire chief was entitled to qualified official immunity, where his duties required him to direct and control the operation of the fire department and control the members in the discharge of their duties. Despite his statutory duties, the Court found that the Fire Chief had discretion regarding how, with what assistance, and in what manner to extinguish fires. *Id.* at 810. We held that the Appellees' duties likewise required them to employ reasonable discretion when directing JCBE's resources to remove snow and ice from parking lots during inclement weather.

We now reconsider our original holding in light of *Marson v. Thomason, supra.*

There, a legally blind student injured himself while walking down a set of bleachers that had not been fully extended at South Floyd Middle School. *Marson*, 438 S.W.3d at 295. The student's parents' brought a negligence action against two principals and a teacher. *Id.* The principals and teachers claimed immunity. In determining whether they were entitled to qualified immunity, the Kentucky Supreme Court concentrated on the nature of the functions the individual defendants performed. *See id.* at 298–302. The Court explained that the determination of whether an act is discretionary or ministerial "rests not on the status or title of the officer or employee, but on the function performed." *Id.* at 296 (citing *Yanero*, 65 S.W.3d at 521). The Court reasoned that while immunity questions are difficult, there must be a "common-sense understanding of what a particular person's job requires." *Marson*, 438 S.W.3d at 300.

The *Marson* Court went through the various employees at South Floyd Middle School, explaining that the custodians, while not named in the lawsuit, would not be entitled to qualified immunity because "it is clear that extending the bleachers was a routine duty, regularly performed by the custodian on duty, and is thus ministerial in nature to the person charged with that job." *Id.* at 298.

The Court held that the "[principal]'s responsibility to look out for the students' safety was a general rather than a specific duty, requiring [the principal] to act in a discretionary manner by devising school procedures, assigning specific tasks to other employees, and providing general supervision of those employees." *Id.* at 299. The Court characterized the principal's duties as being on an operational level. *Id.* The Court noted that the job duties of a principal did not include maintenance duties, such as extending the bleachers in

the gym. *Id.* The principal was not required to daily inspect the bleachers to ensure that they were properly extended or that the custodians were doing their jobs, although they did have general supervision duties of their employees. *Id.*

■ The Appellees argue that similarly to the principal in *Marson*, the supervision of JCBE's snow removal procedures involved decisions made at an operational level. The Appellees contend they are required to act in a discretionary manner by developing district-wide efforts for snow removal procedures, assigning the task of snow removal to other employees, and providing general supervision of JCBE employees. As Rasche concedes in her supplemental brief to this Court, "it is certainly true that none of the named Appellees were responsible for plowing or salting the lots themselves...." Instead, Mulheirn argues, his duties as Executive Director of Transportation and Facilities are operational, as he is responsible for *overseeing* snow and ice removal operations in the parking lots and driveways of each school within the District and does not perform this task himself.

The Appellees contend that Mulheirn delegates his decision-making authority to Appellees Patterson and Fegenbush, who both have the authority and responsibility to determine how to best implement the removal of snow and ice. Patterson, Fegenbush, Cosby and Kaufman work collectively in deciding how best to clear the school parking lots depending upon the particulars of each weather event, JCBE's limited resources, and the constantly changing weather conditions.

The Appellees argue that just as the principal's responsibilities to guard students' safety were discretionary in *Marson*, their decisions in how to best clear the school parking lots were also discretionary. The *Marson* Court stated, "The

distinction between discretionary acts and mandatory acts is essentially the difference between making higher-level decisions and giving orders to effectuate those decisions, and simply following orders." *Marson*, 438 S.W.3d at 297. The Appellees contend that they were making off-site, high-level decisions and giving orders to JCBE lower-level employees on site to effectuate those decisions and are thus entitled to qualified immunity.

In her supplemental brief to this Court, Rasche notes that the teacher on bus duty in *Marson* was not entitled to qualified immunity and argues that the Appellees here are similar to the teacher in *Marson*. The teacher in *Marson* was tasked with a specific duty to oversee the students and steps were followed on a daily basis as part of the established procedures for bus duty at the school. *Id.* at 300–01. The *Marson* Court emphasized that the teachers had "a set, specific routine for coordinating the children and looking out for their safety that [the teacher] was specifically assigned to follow on the day in question." *Id.* at 301. The Appellees argue that their snow removal procedures were not tasks they performed every day and were not part of an established procedure. They contend that they were constantly monitoring variable, changing conditions and adjusting the allocation of limited snow removal resources.

We agree that the Appellees' duties do not simply require only obedience to the orders of others, nor do they follow established policy procedures that are used on a daily basis without discretion. Instead, during inclement weather, the Appellees' responses to hazardous conditions on the school properties will depend upon the circumstances, and they will utilize their discretion in implementing snow removal procedures. Our review of *Marson* and the parties' supplemental briefs and arguments indicates that because the duties the Appellees performed involved and required discretion, they are entitled to qualified immunity.

In her original briefs to this Court, Rasche argued that the actual decision to hold classes on February 13, 2008, was a ministerial action, and therefore the Appellees are not entitled to qualified official immunity for this decision. Rasche contends that the cancellation of a school day to ensure students and faculty members are not injured does not require any significant judgment, statutory interpretation, or policy making decisions. Instead, she argues that decision merely requires attention to the weather conditions known to the Appellees.

We disagree with Rasche. The decision whether to cancel school due to weather is the epitome of a discretionary function for which the Appellees are entitled to immunity. The decision whether to cancel or delay school due to inclement weather is made by JCBE's Superintendent. The Superintendent makes that decision based on recommendations from Mulheirn and Richard Caple, JCBE's Director of Transportation. The Superintendent's decision is not based upon a procedure that is outlined in a formal policy within the school district. Instead, the Appellees review forecasts and upon the occurrence of snow and ice, they and their employees travel to the schools in the district to observe the weather and road conditions. These employees report their findings to Caple and Mulheirn, who then make a recommendation to the Superintendent. Ultimately, it is the Superintendent's call as to whether or not school will be cancelled.

Qualified official immunity is based on the principle that public officials will not be held liable for "bad guesses in gray areas." *Caneyville Volunteer Fire*

*Dept.,* 286 S.W.3d at 810 (quoting *Rowan County v. Sloas,* 201 S.W.3d 469, 475 (Ky. 2006)). The decision not to cancel school on February 13, 2008, was the precise type of "good faith judgment call[ ] made in a legally uncertain environment" that is the hallmark of a discretionary function. *Marson,* 438 S.W.3d at 297 (quoting *Yanero,* 65 S.W.3d at 522). There were no rules governing the decision making process. Rather, the Appellees involved in the decision had to balance out a whole host of factors to determine whether cancelling school would be in the best interest of all involved. Ultimately, the decision was solely within the Superintendent's discretion, and Rasche's arguments to the contrary are without merit.

For the foregoing reasons, we discern no abuse of discretion in the trial court's entry of summary judgment granting qualified official immunity to the Appellees, and we affirm the trial court's September 11, 2012, order of summary judgment.

ALL CONCUR.