Pirundini v. J.P. Morgan Investment Management Inc.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand nineteen.

PRESENT:  DENNIS JACOBS,
    RICHARD J. SULLIVAN,
     <u>Circuit Judges</u>,
    EDWARD R. KORMAN,[*]
     <u>District Judge</u>.

- - - - - - - - - - - - - - - - - - - - -X

JOAN PIRUNDINI,

   <u>Plaintiff-Appellant</u>,

   -v.-            **18-733**

---

[*] Judge Edward R. Korman, United States District Court for the Eastern District of New York, sitting by designation.

**J.P. MORGAN INVESTMENT MANAGEMENT INC.,**

**<u>Defendant-Appellee</u>,**

- - - - - - - - - - - - - - - - - - - -X

FOR PLAINTIFF-APPELLANT:      ANDREW M. MCNEELA (Ira M. Press, <u>on the brief</u>), Kirby McInerney LLP, New York, NY.

FOR DEFENDANT-APPELLEE:      MICHAEL K. ISENMAN, Goodwin Proctor LLP, Washington, D.C. (Mark Holland, Valerie A. Haggans, Charles A. Brown, and Elizabeth S. David, Goodwin Proctor LLP, New York, NY, <u>on the brief</u>).

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Joan Pirundini, on behalf and for the benefit of the J.P. Morgan U.S. Large Cap Core Plus Fund (the "Fund"), sued Defendant J.P. Morgan Investment Management Inc. ("J.P. Morgan"), the Fund's investment advisor, claiming that J.P. Morgan's excessive fees breached its fiduciary duty to the Fund in violation of Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35 ("ICA"). Pirundini appeals the district court's decision dismissing the complaint for failure to state a claim, arguing that the court erred by misapplying the standard and factors set forth in <u>Gartenberg v. Merrill Lynch Asset Mgmt., Inc.</u>, 694 F.2d 923 (2d Cir. 1982). We assume the parties' familiarity with the facts alleged, the procedural history of the case, and the issues on appeal. We accept the facts as pleaded.

The Fund is one of several mutual funds housed in the JPMorgan Trust I and overseen by the same Board of Trustees. At the time the complaint was filed, each of the 12 Trustees qualified as "non-interested," that is, independent, under the ICA. J.P. Morgan serves as the Fund's investment advisor and assesses an annual investment advisory fee of 0.80 percent of the Fund assets pursuant to an Investment Advisory Agreement. Until 2015, the annual fee was 1 percent. The fee does not include any break points at which progressively lower asset-based fees are assessed, but J.P. Morgan did agree to waive fees that exceed specified caps on the Fund's total expense ratio, which is the sum of all Fund fees and operating expenses divided by the Fund's net assets. Thus, J.P. Morgan waived $4.54 million of the $39.74 million in advisory fees owed for the second half of 2016, resulting in a net advisory fee of 0.72 percent. J.P. Morgan also provides administrative services to the Fund for which it is compensated separately.

As the Fund's investment advisor, J.P. Morgan is responsible for selecting and managing the Fund's investment portfolio. From 2005 to 2015, the Fund was managed by two of J.P. Morgan's portfolio managers, during which time the Fund's assets increased from less than $1 billion to more than $10 billion. A third portfolio manager was added in 2015. J.P. Morgan's investment strategies for the Fund include the "less common" strategy of taking short positions. Joint App'x 42.

On appeal, Pirundini argues that the district court misapplied the Gartenberg factors by considering them individually rather than collectively. More fundamentally, she argues that the complaint satisfies the Gartenberg standard and should not have been dismissed.

We review de novo a grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Fink v. Time Warner Cable, 714 F.3d 739, 740 (2d Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

To determine whether an investment advisor has breached its fiduciary duty in violation of Section 36(b), "the test is essentially whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances." Jones v. Harris Assocs. L.P., 559 U.S. 335, 344 (2010) (quoting Gartenberg, 694 F.2d at 928). Courts in this circuit focus on the six Gartenberg factors to aid the inquiry: "(1) the nature and quality of services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees." Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 340 (2d Cir. 2006).

**1.** As Pirundini contends, the district court never explicitly weighed the Gartenberg factors collectively to determine whether the complaint's allegations, taken as a whole, plausibly alleged that Defendant's fees were outside the range of what would have been negotiated at arm's-length. Moreover, the district court's language, at times, suggests that it considered whether each factor in isolation satisfied this pleading burden, in particular, factors 1 and 5. See, e.g., Special App'x 16 ("These allegations [as to factor 1] are insufficient to raise an inference that the fees were so excessive as to violate Section 36(b)."); id. at 20 ("Plaintiff's allegations as to comparative fee structures fail to plausibly allege that the fees [J.P. Morgan] charges the Fund . . . [are] impermissibly excessive."). On the other hand, the court properly evaluated facts alleged relating to factors 2, 3, 4, and 6 to determine whether each factor weighed in Plaintiff's favor. See, e.g., id. at 15 ("These allegations are insufficient to show that the Fund achieved economies of scale . . . ."); id. at 18 ("Plaintiff's allegations can support an inference . . . that [J.P. Morgan] enjoys a fall-out benefit."); id. at 17 ("[N]one of these 'facts' . . . plausibly suggest that the Fund has been particularly profitable . . . ."); id. at 20 ("[T]hese allegations . . . do not suggest a basis for this Court to reject the Board's considered findings as to [J.P. Morgan's] fees.").

Because our standard of review requires us to assess the Gartenberg factors de novo, any error in the district court's method of analysis is rendered moot by our independent evaluation, so we see no reason to vacate the court's decision on these grounds.

**2.** The parties have focused on the fifth <u>Gartenberg</u> factor relating to comparative fee structures. Plaintiff proffers several comparators. We are not persuaded that Bloomberg Finance L.P.'s category of U.S. equity large-cap blend funds is an apt comparator, particularly given its inclusion of index funds. <u>See</u> <u>Jones</u>, 559 U.S. at 350 (noting that courts "must be wary of inapt comparisons"). The other proffered comparators, though apt, result in a wash. While the JPMorgan U.S. Equity Fund pays only half the gross fee charged to Plaintiff, it holds substantially fewer positions than does the Fund and does not take short positions—a "major" difference according to the complaint. Joint App'x 52. J.P. Morgan provides *sub*-advisory services (as opposed to *advisory* services) to the PSF Long/Short Large-Cap Portfolio. The Supreme Court has warned that we should be wary of comparisons "between the fees that an adviser charges a captive mutual fund," like the Fund, "and the fees that it charges its independent clients," like the PSF Fund, <u>Jones</u>, 559 U.S. at 349, and that we "should be mindful that the Act does not necessarily ensure fee parity between mutual funds and institutional clients," <u>id.</u> at 350. Given this warning and the relatively marginal difference in net fees (0.12 percent), we are not inclined to lend this comparison much weight either. Accordingly, we conclude that the complaint's allegations as to the fifth <u>Gartenberg</u> factor are weak.

Plaintiff's allegations regarding the first and second <u>Gartenberg</u> factors are also wanting. As to the first factor, which relates to the nature and quality of the Fund's services, the complaint focuses on the Fund's "essentially middling" performance which placed it in the third, third, and fourth quintiles for 1-, 3- and 5-year periods, respectively, for Class A shares and in the third, second, and third quintiles for Select Class shares. Joint App'x 78. These numbers are unremarkable, and Plaintiff's observation that middle-of-the-pack returns mean that the Fund has underperformed half of its peers is neither here nor there. And the complaint acknowledges that the Fund is within the 20 percent "lowest/best" of its category—measuring performance against fees—according to Broadridge/Lipper. Joint App'x 64–65. As to the second factor—the profitability of the fund to the adviser-manager—a plaintiff at the pleading stage is at a disadvantage, being limited to publicly available information and largely circumstantial evidence. But the complaint's allegations as to this factor significantly duplicate facts adduced as to other <u>Gartenberg</u> factors. And while the complaint alleges revenues totaling approximately $100 million, <u>see</u> <u>id.</u> at 81,

193, it does not reference profit margins, relative profitability of funds, or subsidization of other funds through the Fund's profits sufficient to draw any meaningful inference as to actual profitability.  See, e.g., Chill v. Calamos Advisors LLC, 175 F. Supp. 3d 126, 143 (S.D.N.Y. 2016) (denying motion to dismiss when complaint alleged that parent company had 39.6 percent operating margins and the fund contributed 20 percent to 40 percent of the defendant's advisory-fee income).

The allegations relating to the third and fourth Gartenberg factors are more useful to Plaintiff.  As the district court found, the Fund's ability to operate a "clone" fund (the PSF Fund) at reduced cost supports at least a "weak" inference of a fall-out benefit.  Special App'x 18.  Moreover, the services performed by Defendant as administrator of the Fund, along with services performed by its affiliates, similarly support an inference of fall-out benefits.  And the explosive growth of the Fund's assets under management from $69.2 million in 2006 to $9.86 billion in 2016 supports an inference that the Fund enjoys economies of scale that it has not fully shared with investors.  On the other hand, that inference is tempered; in the same period of time, the Fund has (1) added a third portfolio manager, (2) decreased its fee from 1 percent to 0.8 percent, and (3) waived certain fees resulting in a net fee of 0.72 percent for the second half of 2016.

Pirundini has also provided some support for an inference in her favor under the sixth Gartenberg factor, which relates to the independence and conscientiousness of the Board.  On the one hand, the complaint concedes that each trustee "qualifies under the ICA as a 'non-interested' or independent trustee," Joint App'x 85, and Pirundini's allegations relating to the trustees' compensation, on their own, are insufficient as a matter of law, see Amron, 464 F.3d at 345.  On the other hand, the complaint alleges that the information the Board considered regarding profitability—J.P. Morgan's *unaudited* determination of its revenues—was inadequate to determine whether the Fund's profits were reasonable.  Joint App'x 106.  That allegation provides some support for an inference that the Board was not "fully informed about all facts bearing on the adviser-manager's service and fee," Gartenberg, 694 F.2d at 930, or as conscientious as it could have been.

Although, in the end, the complaint makes a showing under the third, fourth, and sixth <u>Gartenberg</u> factors, Plaintiff has not stated a plausible claim for relief. "[I]n the light of all of the surrounding circumstances," <u>Jones</u>, 559 U.S. at 344 (quoting <u>Gartenberg</u>, 694 F.2d at 928), the existence of fall-out benefits, some unshared economies of scale, and an ill-informed Board do not support an inference that Defendant's fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining," <u>id.</u> (quoting <u>Gartenberg</u>, 694 F.2d at 928).

We have considered Plaintiff's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

EDWARD R. KORMAN, District Judge, concurring:

I concur solely on the authority of <u>Amron v. Morgan Stanley Investment Advisors Inc.</u>, 464 F.3d 338 (2d Cir. 2006). That decision imposed an impossible pleading burden on Section 36(b) plaintiffs by wrongly applying, on a motion to dismiss, the <u>Gartenberg</u> factors, which had previously only been applied after discovery closed. <u>See, e.g.</u>, <u>Gartenberg v. Merill Lynch Asset Mgmt., Inc.</u>, 694 F.2d 923, 925 (2d Cir. 1982) (judgment entered after trial); <u>Jones v. Harris Assocs. L.P.</u>, 559 U.S. 335, 341, 345–46 (2010) (adopting <u>Gartenberg</u> test for summary judgment); <u>Krinsk v. Fund Asset Mgmt., Inc.</u>, 875 F.2d 404, 408-09 (2d Cir. 1989) (applying <u>Gartenberg</u> after trial). <u>Amron</u> requires plaintiffs to plead information solely within the knowledge of the defendant and cannot be reconciled with <u>Gomez v. Toledo</u>, 446 U.S. 635, 641 (1980) (Marshall, J.), which held that it would "be contrary to the established practice in analogous areas of the law" to impose the pleading burden on the plaintiff where she "cannot reasonably be expected to know" the relevant facts. Indeed, "the ordinary rule . . . does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." <u>Campbell v. United States</u>, 365 U.S. 85, 96 (1961) (Brennan, J.); <u>see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 101–02 (2d Cir. 2007) (holding that "at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim" because it "involve[s] facts solely within the defendant's knowledge").

The effects of <u>Amron</u> may be seen throughout the majority's analysis. Here, plaintiff pleaded revenues of at least $100 million, in addition to numerous fall-out benefits, including Rule 12b-1 fees acknowledged in the Fund's Semi-Annual Report, from which J.P. Morgan likely derived a profit. Indeed, she pleaded facts similar to those deemed sufficient in <u>Chill v. Calamos Advisors LLC</u>, 175 F. Supp. 3d 126, 143-44 (S.D.N.Y. 2016), such as alleging that the Fund is among the most profitable funds operated by J.P. Morgan. And yet, her inability to plead more specific information such as profit margins—which were not publicly available but are presumably significant—dooms her claim.

Similarly, as the majority explains, "the complaint alleges that the information the Board considered regarding profitability . . . was inadequate to determine whether the Fund's profits were reasonable." Op. 6. While Pirundini was able to make a showing as to the Board's lack of conscientiousness, her allegations apparently only provide "*some* support for an inference that the Board was not . . . as conscientious as it could have been." Op. 6 (emphasis added). Generally, precisely what information a board reviews in assessing a captive entity's investment adviser agreement is peculiarly within the knowledge of the defendant. Accordingly, plaintiffs will struggle to make a strong showing on this factor. This is especially troubling because a "robust" review process earns a board "commensurate deference." <u>Jones</u>, 559 U.S. at 351. If defendants decline to release information, they make it impossible for plaintiffs to demonstrate that a board's review process is deficient. Ultimately, this may lead courts to award undue deference to underinformed and careless trustees and directors.

In sum, <u>Amron</u> effected a judicial repeal of Section 36(b) by imposing a pleading standard that cannot be satisfied without discovery. Moreover, it encourages investment advisers, such as J.P. Morgan, to conceal information that supports a claim of breach of fiduciary duty. These consequences effectively insulate investment advisers from the Investment Company Act's reach. The ICA was designed to mitigate the problem of captive mutual funds—situations like this one where J.P. Morgan is both the adviser and "the creator, sponsor, and promoter of the mutual fund," <u>Northstar Fin. Advisors Inc. v. Schwab Invs.</u>, 779 F.3d 1036, 1040–41 (9th Cir. 2015) (quotation marks and citation omitted), so the fund "cannot[] as a practical matter sever its relationship with the adviser," <u>Burks v. Lasker</u>, 441 U.S. 471, 481 (1979)). Recognizing the need to balance the conflict

inherent in such captive relationships, Congress created a cause of action for plaintiffs while simultaneously including numerous protections for defendants, such as placing the ultimate burden of proof on plaintiffs, limiting recovery to actual damages incurred in the preceding one-year period, and guaranteeing access to bench, rather than jury, trials.  <u>Amron</u> upsets this legislatively crafted balance and makes the ICA's ends impossible to achieve.  It binds this panel in this case, but it should not be the law.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK