**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TODD ROBERTS, | No. 21-36052 |
| *Plaintiff-Appellant*, | D.C. No. 6:19-cv-01595-MC |
| v. | |
| SPRINGFIELD UTILITY BOARD, a Public Body; JEFF NELSON, in his individual capacity; BOB FONDREN, in his individual capacity; KATHY PECK, in her individual capacity; DIAN RUBANOFF, in her individual capacity; JANIS BREW, in her individual capacity, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted February 6, 2023
Portland, Oregon

Filed May 12, 2023

Before:  MILAN D. SMITH, JR., DANIELLE J.
FORREST, and JENNIFER SUNG, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's summary judgment in favor of defendants in an action brought pursuant to 42 U.S.C. § 1983 alleging, in part, First Amendment violations when plaintiff's former employer, the Springfield Utility Board, restricted him from speaking with potential witnesses and other employees as part of an internal investigation into plaintiff's alleged misconduct.

The panel held that the communication restriction complained of by plaintiff did not violate the First Amendment because it did not limit plaintiff's ability to speak about matters of public concern.  Nothing in defendants' instructions barred him from speaking about any alleged mismanagement at the Springfield Utility Board or other topics that would potentially relate to a matter of public concern.  Rather, the restrictions merely barred him from personally discussing his own alleged violation of Springfield Utility Board policies—a matter of private,

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

personal concern—with potential witnesses or fellow Springfield Utility Board employees.

The panel addressed the remainder of the issues in a concurrently filed memorandum disposition.

---

## COUNSEL

Robert E. Franz Jr. (argued), Law Office of Robert E. Franz Jr., Springfield, Oregon, for Plaintiff-Appellant.

Beth F. Plass (argued) and Karen M. Vickers, Vickers Plass LLC, Lake Owego, Oregon, for Defendants-Appellees Springfield Utility Board, Jeff Nelson, Bob Fondren, and Janis Brew.

Janet M. Schroer (argued) and Ruth A. Casby, Hart Wagner LLP, Portland, Oregon, for Defendants-Appellees Kathy Peck and Dian Rubanoff.

---

## OPINION

M. SMITH, Circuit Judge:

Todd Roberts previously worked for the Springfield Utility Board (SUB). As part of an internal investigation into Roberts' alleged misconduct, SUB restricted Roberts from speaking with potential witnesses and other SUB employees regarding the subject of the investigation while it was underway. Roberts sued SUB, certain SUB employees, and SUB's retained counsel pursuant to 42 U.S.C. § 1983, alleging that the investigation-related speech restrictions

violated the First Amendment. The district court granted summary judgment in favor of Defendants, and Roberts appealed.

We hold that the communication restriction complained of by Roberts does not violate the First Amendment because it did not limit Roberts' ability to speak about matters of public concern. Rather, it merely barred him personally from discussing his own alleged violation of SUB policies— a matter of private, personal concern—with potential witnesses or fellow SUB employees. This restriction did not violate the First Amendment. We therefore affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

For over two years, Todd Roberts worked as a Safety and Environmental Coordinator for SUB. During that time, SUB policy stated that "[e]mployees are expected to keep unscheduled absences and tardiness to a minimum by making every effort to arrive to work as scheduled and return from meal and rest periods on time." SUB further required that "[e]xcept in emergency or illness situations, requests for [time off] . . . must be submitted to an employee's supervisor in advance." SUB policy also warned that "[d]ishonesty of any type including falsifying any document or verbal misrepresentations" is a violation that "should generally result in immediate dismissal."

In August 2019, Roberts took unscheduled time off. That morning, Roberts emailed SUB's HR Manager: "I will be out all today working on the kids school/sport

---

[1] We address the remainder of the issues Roberts raised on appeal in a concurrently filed memorandum disposition.

registrations and such to ensure they are all ready for school next week." Four minutes later, however, Roberts emailed a co-worker: "I'm looking at your boat's slip right now headed to the Pig N Pancake." The record indicates that Roberts later attempted to delete this email.

After discovering that Roberts may have misrepresented the reason for his absence from work, SUB hired two attorneys, Kathy Peck and Dian Rubanoff. SUB retained Rubanoff to investigate Roberts' suspected "dishonesty related to [his] work attendance." It also retained Peck to provide legal advice during that investigation.

In September 2019, SUB placed Roberts on paid administrative leave pending an investigation into whether he had been truthful about his unscheduled time off. The Notice of Paid Administrative Leave from Defendant Bob Fondren, SUB's Finance Director, read:

> "***While this matter is being investigated, you are prohibited from engaging in communication in any form with any employees of SUB*** other than me, unless you have received prior written permission from me for such communications. Any contact with SUB employees, including your supervisor, ***regarding this matter*** will constitute gross insubordination and be subject to disciplinary action, including immediate termination of employment. The directives above are not intended to limit your ability to provide information on your own behalf. You will be given an opportunity to respond to any claims made against you." (Emphasis added.)

Rubanoff then interviewed Roberts twice. At the beginning of the first interview, Rubanoff instructed Roberts:

> "***To protect the integrity of the investigation, you are restricted from discussing it with other employees of SUB while it is ongoing***, current or former employees. You have received a separate notice of paid administrative leave, and nothing in my introductory notes here is intended to change any instructions you were given in that notice." (Emphasis added.)

After that interview, Roberts' attorney sent Rubanoff an email requesting that SUB remove the communication restriction on Roberts on the basis that it prevented him from gathering information for his defense. SUB declined the request.

During Roberts' second interview, Rubanoff repeated her instruction not to speak with potential witnesses about the investigation:

> "I'm going to instruct you not to communicate with any potential witnesses about the information that you've given . . . ***Do not communicate with potential witnesses we've discussed about the investigation or about the information you've provided in the investigation***[.]" (Emphasis added.)

Rubanoff clarified that the communication restriction applied only during the pendency of the investigation, did

not apply to Roberts' discussions with his wife, did not prevent Roberts' attorney from contacting witnesses on Roberts' behalf, and that Roberts would have the opportunity to contact potential witnesses upon the conclusion of the investigation. She further indicated that the restriction was intended to prevent Roberts from potentially interfering with witness statements.

In December 2019, SUB issued a Notice of Proposed Termination to Roberts, which described the findings of the investigation and the policies SUB determined that Roberts had violated. The notice informed Roberts of the date and time of his pre-termination meeting, which Roberts did not attend. SUB then tendered a Notice of Termination to Roberts the day after his pre-termination meeting was scheduled, informing him of his right to seek review of the decision in a post-termination hearing. Roberts did not seek review of his firing in a post-termination hearing.

## B. Procedural History

During the pendency of SUB's investigation into his conduct, Roberts filed the present lawsuit. Relevant here, Roberts asserts a claim pursuant to 42 U.S.C. § 1983 that Defendants—SUB, certain SUB employees, and SUB's retained counsel—violated his First Amendment right to free speech by instructing him not to speak with other SUB employees during the pendency of the investigation. The district court granted summary judgment in favor of Defendants. It assumed that SUB's instructions limited Roberts' ability to speak on matters of public concern but determined that the restriction was nonetheless permissible because it served SUB's legitimate interest in preventing interference with the ongoing investigation into his alleged misconduct. Roberts now appeals.

## STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review a district court's decision to grant summary judgment de novo, and we may affirm on any ground supported by the record.  *Barone v. City of Springfield*, 902 F.3d 1091, 1097 (9th Cir. 2018).

## ANALYSIS

The limited speech restrictions that SUB placed on Roberts during the pendency of its internal investigation into his alleged misconduct did not violate the First Amendment.[2]  A public employer "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465 (1995). When evaluating such government-employer restraints, we apply the two-step balancing test derived from *Pickering v. Board of Education*, 391 U.S. 563 (1968), and its progeny.  We first look to "whether the employee spoke as a citizen on a matter of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  If so, we then consider "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.*  If, on the other hand, the speech did not address a matter of public concern, the employee simply has no First

---

[2] To state a claim pursuant to § 1983, a plaintiff must allege defendants acted under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  As a general matter, a person acts under color of state law if her conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937–38 (1982).  We assume without deciding that Peck and Rubanoff are state actors for the purpose of analyzing whether Roberts can establish § 1983 liability.

Amendment cause of action under *Pickering*. *Id.*; *see also Connick v. Myers*, 461 U.S. 138, 146 (1983) (concluding that if a plaintiff's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for [a court] to scrutinize the reasons for her discharge").

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (cleaned up). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. "Speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)); *see also Connick*, 461 U.S. at 147–48 (determining that communications regarding an employee's various workplace grievances did not constitute matters of public concern).

Where, as here, a public employer instructs an employee not to communicate with potential witnesses regarding a workplace misconduct investigation during the pendency of that investigation, the impacted speech generally is not on a matter of public concern under *Pickering*. Here, the communication restriction affected Roberts' personal ability to discuss only the investigation into his own alleged violation of SUB personnel policies governing time off and

employee dishonesty. Further undercutting Roberts' claim, his attorney was not restricted from contacting any SUB employees about Roberts' alleged actions during the pendency of the investigation. Any speech impacted by SUB's instruction concerned a quintessential "individual personnel dispute[]" that is of "no relevance to the public's evaluation of [SUB's] performance." *Coszalter*, 320 F.3d at 973.

Roberts resists this conclusion by arguing that the communication restriction was "[not] limited to topics relating to the investigation" and "covered all speech" with "his co-employees," including speech regarding the "abuse of employees by management, mismanagement of funds, and hostilities in the workplace created by management." But this mischaracterizes the record. Contrary to Roberts' assertions, nothing in Defendants' instructions barred him from speaking about any alleged mismanagement at SUB or other topics that would potentially relate to a matter of public concern. Instead, the restriction placed on Roberts' speech pertained only to communication with SUB employees or other potential witnesses ***regarding the ongoing investigation into his alleged misconduct***. Roberts was free to speak with fellow employees—or anyone else—regarding SUB's "performance" of its duties had he wished to do so. *See Coszalter*, 320 F.3d at 973. Accordingly, his First Amendment claim fails.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of Defendants is **AFFIRMED**.